[Civ. No. 1754.   Second Appellate District.—September 24, 1915.]

## EMIL FIRTH, Respondent, v. LOS ANGELES PACIFIC LAND COMPANY (a Corporation), Appellant.

DEED—COVENANTS AND CONDITIONS SUBSEQUENT—CONSTRUCTION.—It is a well-established rule, irrespective of the provisions of the Civil Code made in the same direction, that where in construing the terms of a conveyance of real property there may appear doubt as to whether a stipulation in the nature of a statement of a condition subsequent, the observance of which would work to defeat the title of the grantee, was intended as a covenant or strictly as a condition, the effort of the court will be to prevent a forfeiture, and in such a case the agreement will be held to amount to a covenant merely; but while this is an established rule of construction, it is also true that where words have been used which show a clear and unmistak-

able intention on the part of the grantor to create an estate on condition, such a condition will be upheld.

ID.—CONSTRUCTION OF DEEDS—INTENT—WHOLE INSTRUMENT TO BE CONSIDERED.—A deed of conveyance is but a contract, subject to the usual and ordinary rules of construction applicable to such instruments, and one of these rules, generally adopted and constantly applied, is that the whole of the instrument shall be examined in order to ascertain the intent of the parties.

ID.—CONVEYANCE FOR RAILROAD RIGHT OF WAY—CONSTRUCTION OF DEED —CONDITION SUBSEQUENT.—A deed of real property, which first purports in direct terms to make an unreserved conveyance of the land in fee simple, and then provides that the land is so conveyed as a right of way for an electric railroad and for no other purpose, and that if the road is not built within the stated time, the land shall revert to the grantor, is a conveyance upon condition subsequent, and upon breach of the condition the grantor is entitled to have his title to the land quieted as against the grantee.

ID.— SATISFACTION OF CONDITION SUBSEQUENT — SUBSTANTIAL COMPLIANCE—EXTENSION OF STREET RAILROAD—INSUFFICIENT COMPLIANCE. Under the equitable rule, such a condition subsequent as that expressed in the deed of conveyance above mentioned, would be deemed satisfied by a substantial compliance therewith, but the extension of a certain street-car line along a street a considerable distance from the land in question, is not such a compliance.

ID.—ACTION TO QUIET TITLE—RECONVEYANCE FOR CONDITION BROKEN— ULTRA VIRES ACT OF GRANTEE—ESTOPPEL.—In an action to quiet title and to secure a decree requiring a reconveyance to be made on the ground of breach of the condition subsequent in such deed, the defendant cannot contend that as it was organized as a land concern and under its articles of incorporation had no authority or right to construct railroads, such a contract as to it was *ultra vires,* void and unenforceable, as the condition under which the title was to revert was not unlawful or illegal.

ID.—EXTENSION AGREEMENT — CONDITION SUBSEQUENT NOT WAIVED.— The execution of an agreement by the grantor extending the time for the construction of the road for one year, but preserving in effect all of the agreements of the original deed, is not a waiver of the condition subsequent recited in the deed.

ID.—QUIETING TITLE—FORMAL RE-ENTRY UNNECESSARY PREREQUISITE.— A formal re-entry upon the land is not a necessary prerequisite to the bringing of an action to quiet title after breach of condition subsequent.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, and A. W. Ashburn, Jr., for Appellant.

Sheldon Borden, and George H. Moore, for Respondent.

JAMES, J.—In the year 1907 appellant, on the payment of a sum in excess of thirteen thousand dollars to the plaintiff, received from the plaintiff a deed of conveyance of certain land in what was called the Oxford Square Tract. The deed in part had the usual form of a grant in fee, but contained also a statement of certain conditions. Among other things it was in the deed provided: "That the said strip of land is so conveyed as and for a right of way for an electric railroad, and shall be devoted to no other purpose or purposes; that a line of double-track electric railroad extending from said tract of land to the city of Los Angeles, shall be constructed and in operation within three years from the date of October 20, 1906, with modern cars, equipment and appliances; that said railroad is to be operated as an electric line for the purpose of carrying passengers, . . . " Other stipulations were expressed relative to the grade of the proposed railroad, kind of fencing to be used along the right of way, that a culvert should be built by the grantee across an arroyo, etc., all of which stipulations so expressed were followed by this provision: "All the foregoing provisions are hereby declared to be conditions upon which the title of the said party of the second part to the said strip of land so agreed to be conveyed, shall depend, and upon breach of the said conditions, or any of them, the said strip of land shall revert unto the said party of the first part, his heirs and assigns." There was also inserted in conclusion a clause to the effect that the conveyance was of "all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof. To have and to hold, all and singular the said premises, together with the appurtenances, unto the said party of the second part and to its heirs and assigns forever." Subsequent to the execution of the deed of conveyance mentioned, and on the twenty-fifth day of January, 1909, the parties executed a writing by which it was proposed to extend the time for

the building of the railroad one additional year, or to the twentieth day of October, 1910. In March, 1911, the railroad not having been built, this action was commenced to quiet the title in the grantor, the plaintiff, and to secure a decree requiring a reconveyance to be made on account of the condition broken. The appeal is from the judgment rendered in favor of the plaintiff, and from an order denying a motion for a new trial.

It is first contended on the part of appellant that under the deed of conveyance no forfeiture of title could be worked by the failure of the grantee to construct or have constructed the railroad as therein agreed within the stipulated time, because the recitals of the deed expressing that understanding amounted only to a covenant and not to a condition. As ordinarily considered, the breach of a covenant renders the covenantor liable only in damages, while a conveyance upon condition subsequent may, if the agreement is so expressed between the parties, result in a forfeiture of the title of the vendee. It is a well-established rule, irrespective of the provisions of our Civil Code made in the same direction, that where, in construing the terms of a conveyance of real property, there may appear doubt as to whether a stipulation in the nature of a statement of a condition subsequent, the observance of which would work to defeat the title of the grantee, was intended as a covenant or strictly as a condition, the effort of the court will be to prevent a forfeiture, and in such a case the agreement will be held to amount to a covenant merely. (1 Tiffany's Modern Law of Real Property, sec. 69; 2 Pingrey on Real Property, sec. 739.) But while this is an established rule of construction, it is also true that where words have been used which show a clear and unmistakable intention on the part of the grantor to create an estate on condition, such a condition will be upheld. In the deed here under consideration there would seem to be no possible room to raise a question, under the language used by the grantor, but that it was the intent to make the conveyance upon the express conditions therein described, the nonfulfillment of which on the part of the grantee would cause the land to revert to the grantor. "It is so nominated in the bond."

The instrument of conveyance analyzed, first purports in direct terms to make an unreserved conveyance in fee simple. The effect of the general words used is then expressly and

particularly restricted by the statement of the particular conditions upon which the land is to be taken by the grantee. It has often been declared that a deed of conveyance is but a contract, subject to the usual and ordinary rules of construction applicable to such instruments. One of these rules, generally adopted and constantly applied, is that the whole of the instrument shall be examined in order to ascertain the intent of the parties. "The inclination of many courts at the present day is to regard the whole instrument, without reference to formal divisions. The deed is so construed, if possible, as to give effect to all its provisions, and thus to effectuate the intent of the parties." (1 Jones on Law of Real Property, sec. 568; *Barnett* v. *Barnett,* 104 Cal. 298, [37 Pac. 1049]; *Knight* v. *Black,* 19 Cal. App. 518, [126 Pac. 512].) In *Barnett* v. *Barnett,* it is said: "The rule that if the *habendum* is repugnant to the premises it is to be disregarded, is only another form of the rule that 'if several parts of a grant are absolutely irreconcilable the former part prevails.' (Civ. Code, sec. 1070.) The intention of the parties to the grant is to be gathered from the instrument itself, and determined by a proper construction of the language used therein, . . . ."

It is admitted that under the equitable rule such a condition subsequent as that expressed in the deed of conveyance herein involved would be deemed satisfied by a substantial compliance therewith. It is claimed that there was such a substantial compliance made by this grantee  It appears from the evidence that the tract of land known as Oxford Square has its eastern frontage along Pico Street in the city of Los Angeles; that sometime after the making of this conveyance, but before the agreement of extension was executed, an electric street-car line was constructed and placed in operation on Pico Street, along the eastern line of Oxford Square Tract. The land conveyed to the appellant and upon which it agreed to construct the railway was a considerable distance from Pico Street. Not only was there no electric railway established upon the ground conveyed, but none was so established within what might be termed a reasonable distance thereof. Furthermore, it is very plain that the extension of the Pico Street line was not intended by appellant as and in compliance with its contract with the plaintiff, and it had no connection therewith. As suggested by the respondent, the making of the agreement extending the time for appellant's performance, which was of date

subsequent to the time that the Pico Street line was extended, showed very satisfactorily that the parties did not regard the Pico Street extension as being in any way intended as satisfying the terms of the contract made between them.

The further plea is made on the part of appellant that as it was organized as a land concern and under its articles of incorporation had no authority or right to construct railroads, such a contract as to it was *ultra vires,* void, and unenforceable. The condition expressed under which the title of the grantee was to revert was not such a condition as is denominated by the law "illegal or unlawful." There is no doubt at all that the breach of a contract which is against public policy or which contravenes the express prohibition of a statute, cannot be made the subject of an action. There was nothing unlawful about the agreement here made, and it would be to allow the appellant to take advantage of its own wrong to give sanction to such a plea.

In our opinion, there is no merit in the contention that by the making of the extension agreement the plaintiff waived the condition made in his favor. The extension agreement purported to preserve in effect all of the agreements of the original conveyance, except that it allowed to the appellant an additional year within which to perform its part of the contract.

Neither do we believe, as is contended for by appellant, that a formal re-entry upon the land was necessary as a prerequisite to the bringing of this action. "The title to land conveyed upon a condition subsequent vests in the grantee, and his failure to perform the condition does not divest the title. The title is divested only upon the entry of the grantor or his heirs for the condition broken, *or by a suit for the recovery of possession, or other act equivalent to an entry.*" (1 Jones on Law of Real Property, sec. 708.) The act of re-entering was one mode by which a determination of the grantor to take advantage of the condition broken might be manifested. It would also be well manifested by the bringing of an action to have declared the estate of the grantee terminated. And section 1109 of our Civil Code contains this express provision: "Where a grant is made upon condition subsequent, and is subsequently defeated by the non-performance of the condition, the person otherwise entitled to hold under the grant must reconvey the property to the grantor or his successors,

by grant, duly acknowledged for record." (*Quatman* v. *Mc-Cray*, 128 Cal. 285, [60 Pac. 855].)

No further points are presented which require consideration or discussion.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 22, 1915.