[Civ. No. 8048.   Fourth Dist., Div. One.   Dec. 5, 1966.]

LYMAN W. AMES, as Administrator, etc., et al., Plaintiffs and Appellants, v. THE IRVINE COMPANY, Defendant and Respondent.

Ruiz & Ruiz, Manuel Ruiz, Jr., and Alexander Ruiz for Plaintiffs and Appellants.

William L. Anderson, J. Gregg Evans and James G. Scarborough for Defendant and Respondent.

COUGHLIN, J.—Plaintiffs, as administrators of the estate of Teodocio Yorba, deceased, filed this action to obtain a judgment declaring the estate and heirs of Yorba to be the owners of a 7/11ths interest in a tract of land defendant claims entirely. Judgment decreeing the estate and heirs of Yorba had no interest in the land followed an order granting defendant's motion for summary judgment, and a further order denying plaintiffs' motion for judgment on the pleadings or, in the alternative, for summary judgment. Plaintiffs appealed; contend the court erred in granting defendant's motion, because the facts do not support the judgment, and also erred in denying their motion. We have concluded the orders in question were proper, and the judgment should be affirmed.

The tract in question consists of approximately 10.7 square leagues of land described in a patent issued by the United States of America on February 1, 1868, pursuant to the Act of Congress of March 3, 1851 (9 Stat. 631, ch. 41), providing for the settlement of Mexican land grant claims.

This patent followed confirmation, in the manner prescribed by the Act of Congress, of the claim of Yorba under a Mexican land grant dated May 26, 1846. In that grant the land was described as follows: "The Range of hills situated upon the slope of the Sierra Known by the name of the 'Santiago', being bounded by the same upon the East, by the Serrito de los Ranas and the boundary of San Joaquin upon the West, and by the 'Rancho del Toro' upon the South."

Under the law of Mexico controlling such grants, the maximum size thereof was limited to 11 square leagues. (*United States* v. *Hartnell's Heirs*, 63 U.S. (22 How.) 286 [16 L.Ed. 340].)

The Act of Congress provided that proceedings might be

instituted to confirm a claim to land under a Mexican grant, and further provided that unless a petition to confirm such a claim was filed within two years after adoption of the act the land subject thereto would be considered a part of the public domain of the United States. (*Botiller* v. *Dominguez,* 130 U.S. 238, 946 [32 L.Ed. 926, 928, 9 S.Ct. 525, 527] ; *More* v. *Steinbach,* 127 U.S. 70 [32 L.Ed. 51, 8 S.Ct. 1067].)

On October 26, 1852, Yorba filed a petition with the United States Board of Land Commissioners to confirm his title to the land claimed under the aforesaid grant; referred to it as "a tract of land called Lomas de Santiago containing *four square leagues* more or less, situated in the County of Los Angeles;" (Italics ours) and described its boundaries in the same manner as in the grant. The Board of Land Commissioners confirmed Yorba's title and, on December 11, 1856, its order was affirmed by the District Court of the United States for the Southern District of California by decision which stated, in part, ". . . that the claim of the appellee (Yorba) is good and valid and that the same be and hereby is confirmed to him to the extent of Eleven Square Leagues & no more within the boundaries specified in the grant or 'Titulo' filed in this case reference being had to the Expediente and Map referred to in Said Grant and to the act of Judicial Possession filed in this case: Provided that if there be less than the quantity of Eleven Square Leagues of land contained and included within the boundaries mentioned, then Confirmation is hereby made of Such less quantity."[1]

On December 3, 1860, Yorba and his wife executed a deed which is the source of the controversy at hand. This deed conveyed to a man named Wolfskill a tract of land described as follows: "All That certain tract of land situated in the City and County of Los Angeles and State of California Known as the Rancho of Santiago, containing Four Leagues be the same more or less and bounded on the North by the Santa Ana River, East by the mountains South by the Rancho

---

[1]Under the Mexican law applicable to land grants the petitioner for a grant was required to accompany his application with a map of the land in question (called a diseno) ; the record of the proceedings was called the "espediente" which consisted of (1) the application, (2) the map, (3) an order referring the matter to local authorities for confirmation, (4) a report by the local authorities, (5) the grant or "titulo" by the Governor, and (6) the approval by the departmental assembly; and following these proceedings a delivery of possession of the land described in the grant by a magistrate was essential to its validity; the latter ceremony was called the "act or delivery of juridical possession"; and a record of this proceeding was kept by the magistrate and a copy given the grantee. (Gen. see *United States* v. *Bolton,* 64 U.S. (23 How.) 341, 350 [16 L.Ed. 569, 572].)

of Aliso and West by the Rancho of San Joaquin, reference being made to the original grant and to the decrees of confirmation in the United States District Court, for a more particular description, the quantity given by the United States Court to be the quantity conveyed by this instrument. . . .''

Previously Yorba had executed mortgages upon a tract of land referred to as Rancho of Santiago, containing six leagues of land, more or less; these mortgages also contained a description by reference to the location of other ranches or natural monuments. The latest of these was executed on October 22, 1859, in favor of Wolfskill to secure the payment of $7,000. The recorded copy of this mortgage contained a marginal satisfaction dated December 4, 1860.

Following confirmation of the grant, and preceding issuance of the patent, as provided by law a survey and map of the tract of land included within the decree of confirmation were made through the office of the United States Surveyor General.

The patent, dated February 1, 1868, recites the proceedings in the premises from issuance of the Mexican grant to the filing of the aforesaid survey and map in the office of the Surveyor General; refers to the property in question as a tract of land "called Lomas de Santiago"; incorporates the map which is attached to the certificate of the Surveyor General certifying Yorba was entitled to a patent for the land; and describes the land by metes and bounds.[2] As described and shown on the map the tract in question contains 47,226.61 acres of land or approximately 10.7 square leagues.

Plaintiffs contend the deed from Yorba to Wolfskill conveyed a tract of land known as "Rancho of Santiago" containing four square leagues; this tract of land was part of a larger tract known as "Lomas de Santiago" containing eleven square leagues; the conveyance to Wolfskill did not identify the boundaries of "Rancho of Santiago" with certainty; as a consequence, under settled law,[3] Wolfskill received an undivided 4/11ths interest in the tract known

[2]The description of the land claimed and confirmed as contained in the patent is conclusive. (*De Guyer* v. *Banning,* 167 U.S. 723 [42 L.Ed. 340, 17 S.Ct. 937, 941].)

[3]The rules of law upon which plaintiffs rely are stated in *Schenk* v. *Evoy,* 24 Cal. 104, 110, as follows: ''Where a deed is of a given quantity of land, parcel of a larger tract, and the deed fails to locate the quantity so conveyed by a sufficient description, the grantee, on delivering of the deed, becomes interested in all the land embraced within the largr area, as tenant in common with his grantor.'' (In accord: *Grogan* v. *Vache,* 45 Cal. 610, 613; *Lawrence* v. *Ballou,* 37 Cal. 518, 520.)

as "Lomas de Santiago"; and Yorba retained an undivided 7/11ths interest in that tract.

The defendant contends, as the trial court concluded, that the conveyance to Wolfskill on its face shows it was the intention of the parties to transfer all of the land received by Yorba under the Mexican grant and confirmed by decree of the United States District Court.

■ The construction of a deed, on its face, including the description therein, involves a question of law. (*Mulford* v. *LeFranc*, 26 Cal. 88, 111-112; *Victory Oil Co.* v. *Hancock Oil Co.*, 125 Cal.App.2d 222, 233 [270 P.2d 604].) ■ The intention of the parties as expressed in the deed controls. (*Burnett* v. *Piercy*, 149 Cal. 178, 189 [86 P. 603]; *Faivre* v. *Daley*, 93 Cal. 664, 670-671 [29 P. 256]; *Mulford* v. *LeFranc, supra*, 26 Cal. 88, 111; *Basin Oil Co.* v. *City of Inglewood*, 125 Cal. App.2d 661, 663 [271 P.2d 73]; *Wilkerson* v. *Thomas*, 121 Cal.App.2d 479, 484 [263 P.2d 678].) In determining this intention the whole instrument should be considered. (*Slavich* v. *Hamilton*, 201 Cal. 299, 304 [257 P. 60]; *Coon* v. *Sonoma Magnesite Co.*, 182 Cal. 597, 600 [189 P. 271]; *Burnett* v. *Piercy, supra*, 149 Cal. 178, 189; *Faivre* v. *Daley, supra*, 93 Cal. 664, 670; *Pio Pico* v. *Coleman*, 47 Cal. 65, 67; *Basin Oil Co.* v. *City of Inglewood, supra*, 125 Cal.App.2d 661, 663; *Wilkerson* v. *Thomas, supra*, 121 Cal.App.2d 479, 484.) ■ Reference in a deed to other documents or maps incorporates the latter therein with the same effect as though copied into the instrument. (*Vance* v. *Fore*, 24 Cal. 435, 444; *City of Oakland* v. *Adams*, 37 Cal.App. 614, 616 [174 P. 947]; see also *Faivre* v. *Daley, supra*, 93 Cal. 664, 671.) ■ Clauses or words repugnant to the intention of the parties as disclosed in the deed should be rejected. (*Coon* v. *Sonoma Magnesite Co., supra*, 182 Cal. 597, 600; *Basin Oil Co.* v. *City of Inglewood, supra*, 125 Cal.App.2d 661, 663; see also *Burnett* v. *Piercy, supra*, 149 Cal. 178, 189-190; *Faivre* v. *Daley, supra*, 93 Cal. 664, 671; *Wilcoxson* v. *Sprague*, 51 Cal. 640, 642; cf. *Select Base Materials* v. *Board of Equalization*, 51 Cal.2d 640, 645 [335 P.2d 672]; *Harris* v. *Klure*, 205 Cal.App.2d 574, 577 [23 Cal.Rptr. 313].) ■ A statement of the quantity of land conveyed is the least certain part of the description and yields to a statement of boundaries. (*Gragg* v. *Culp*, 198 Cal. 579, 585 [246 P. 43]; *Stanley* v. *Green*, 12 Cal. 148, 162-163.)

■ The intention of the parties to the instant deed was to transfer to Wolfskill all of the property obtained by Yorba under the Mexican grant to which title had been confirmed by

the United States District Court. Reference in the deed to "the Rancho of Santiago, containing Four Leagues be the same more or less" loses significance in determining the intention of the parties upon consideration of the further reference to the tract as "bounded on the North by the Santa Ana River, East by the mountains South by the Rancho of Aliso and West by the Rancho of San Joaquin, reference being made to the original grant and to the decrees of confirmation in the United States District Court, for a more particular description, the quantity given by the United States Court to be the quantity conveyed by this instrument." All of the foregoing references are part of the granting clause. Noteworthy, also, is the fact that in his petition for confirmation Yorba referred to the property claimed by him as a tract of land "containing four square leagues," by virtue of which he obtained a confirmation of his claim to that tract of land "to the extent of Eleven Square Leagues," and a patent to that tract of land using a description thereof encompassing 10.7 square leagues. It is significant the grantors specifically stated that the quantity of land "given" by the United States Court was the quantity of land conveyed by the deed. The term "given," contrary to plaintiffs' contention, is used to denote the action of the court in confirming the claim of Yorba "to the extent of Eleven Square Leagues & no more within the boundaries specified in the grant . . . Provided That if there be less than the quantity of Eleven Square Leagues of land contained and included within the boundaries mentioned, then Confirmation is hereby made of Such less quantity." The only land with which this action is concerned is that included within the decree of confirmation; is the land particularly described in the patent; and is that in which plaintiffs, for the estate of Yorba and his heirs, claim an undivided 7/11ths interest. The language of the deed does not support the conclusion it refers to a tract of land known as the Rancho of Santiago, containing Four Square Leagues, which is included within a larger tract having boundaries as therein stated. Instead the language distinctly refers to a tract of land known as the "Rancho of Santiago, containing Four Leagues . . . *and* bounded on the North by the Santa Ana River, East by the mountains South by the Rancho of Aliso and West by the Rancho of San Joaquin. . . ." (Italics ours.) The map incorporated in the patent, under which all parties claim, portrays the tract of land covered by the patent to be an irregularly shaped, seven-sided parcel the northerly portion of which is triangular, with

the northerly tip of the triangle intersected by the Santa Ana River which constitutes the northerly boundary of the property. Thus that part of the description of the tract of land as bounded "on the North by the Santa Ana River," which is contained in the deed, coincides with the description of the northerly boundary as ultimately determined and set forth in the patent. The easterly, southerly and westerly boundaries stated in the deed are, respectively, "the mountains," "the Rancho of Aliso," and "The Rancho of San Joaquin." The plat incorporated in the patent notes a range of mountains on the east of the subject property, the "Ranch Cañada de Los Alisos" to the southwest, and the "Rancho San Joaquin" to the south and west. The quantity of land encompassed within the boundaries of the deed viz., the Santa Ana River, the mountains on the east, the Rancho of Aliso and the Rancho San Joaquin, equates that confirmed by the district court's decree. The additional statement in that part of the deed describing the tract of land conveyed which refers "to the original grant and decree of confirmation in the United States District Court for a more particular description," further corroborates the conclusion that the property described was that received under the original grant and confirmed by the court decree which was a tract of land determined to contain approximately 10.7 square leagues. The reference to the "original grant" and the "decree of confirmation" for a more particular description qualifies the reference to the property as the "Rancho of Santiago containing Four Leagues." (See *Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 212, 222 [183 P. 809].)

The plaintiffs, by a process of segmentation, confine the description in the deed to a "tract of land known as the Rancho of Santiago containing Four Leagues." In this manner they claim the statement in the deed that "the quantity given by the United States Court to be the quantity conveyed by this instrument" should be disregarded as a part of the *habendum* clause in conflict with the grant; in the quoted statement the term "given" has no meaning because the court did not give any property; there is no northerly boundary described in the original grant; in executing mortgages referring to a tract known as the "Rancho of Santiago" Yorba identified a tract smaller in area than that included within the tract known as "Lomas de Santiago," which was a designation used in his petition for confirmation and in the patent; the mortgage from Yorba to Wolfskill in 1859, satisfaction of which was entered

on December 4, 1860, should be considered in construing the deed under the contemporaneous writing rule; reference in the deed to the "original grant" is not of assistance because the description therein by natural boundaries covered over 100 square leagues and, in fact, only two boundaries are there described; the reference in the deed to the original grant and the decree of confirmation "for a more particular description" is of no effect because the description referred to is fatally defective as incapable of fixing an area; and the reference to the prior proceedings is only as a source of title and not by way of description. None of these claims is valid. The intention of the parties must be obtained from a consideration of the deed as a whole rather than the itemized manner adopted by plaintiffs. The statement that the quantity given by the United States court was the quantity to be conveyed by the deed is a part of the granting clause rather than the *habendum*. In any event, the intention of the parties is gathered from the whole instrument. (*Basin Oil Co.* v. *City of Inglewood, supra,* 125 Cal.App.2d 661, 662.) The use of the term "given" with reference to the action taken by the United States District Court has no significance in determining the intention of the parties. Of like import are the arguments that there is no northerly boundary described in the original grant, the description therein covered over 100 leagues, or that Yorba executed mortgages on a tract of land he referred to as Rancho of Santiago. Even considering the 1859 mortgage as a contemporaneous writing, the description therein, in light of the description in the deed, did not indicate an intention by the parties to convey less than the amount of land Yorba had received under the original grant as confirmed by the decree of the United States District Court. Whether any particular description incorporated in the deed by reference to other documents was complete in itself is of no consequence. The references in question dictate the conclusion the parties intended the deed to convey all of the property Yorba received under his grant as confirmed by the court's decree. Other claims by the plaintiffs are similar in import to those heretofore noted and need not be given specific consideration because none of them dictates a contrary conclusion respecting the intention of the parties.

Procedural objections advanced by plaintiffs at oral argument as grounds for reversal have no merit. The affidavits upon which the motions for summary judgment were submitted do not present any triable issue of fact. The intention of

the parties to the subject deed is ascertainable from the language used as related to undisputed facts. The issue thus presented is one of law. (*Western Coal & Mining Co.* v. *Jones,* 27 Cal.2d 819, 826 [167 P.2d 719, 164 A.L.R. 685].) Under these circumstances a summary judgment is proper. (*Loma Portal Civic Club* v. *American Airlines, Inc.,* 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548]; *People* ex rel. *Mosk* v. *City of Santa Barbara,* 192 Cal.App.2d 342, 349 [13 Cal.Rptr. 423]; *Tibbs* v. *Smart & Final Iris Co.,* 152 Cal.App.2d 618, 623 [313 P.2d 636].)

The judgment is affirmed.

Brown, P. J., and Whelan, J., concurred.

A petition for a rehearing was denied December 21, 1966, and appellants' petition for a hearing by the Supreme Court was denied February 1, 1967.